[Crim. No. 23840. First Dist., Div. Two. Oct. 14, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
DARRELL DWAYNE SAMUELS, Defendant and Appellant.

1110

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Frances Ternus, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Daniel J. Kremer, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Herbert F. Wilkinson and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**SMITH, J.**—On appeal from an order revoking probation, defendant Darrell Samuels contends that the trial court's denial of his motions to continue the revocation hearing until after trial on the underlying charge constituted an abuse of discretion and deprived him of his right to due process of law, his right to present a defense and his privilege against compulsory self-incrimination.

On July 23, 1981, after pleading guilty to one count of attempted grand theft from the person of another (Pen. Code, §§ 487, subd. 2, 664), defendant was placed on three years probation with imposition of sentence ordered suspended. On August 5th, he was arrested on the charge of attempted robbery (Pen. Code, §§ 211, 664), and he was held to answer on the charge on August 20th. Trial was set for October 26, 1981.

Meanwhile, on August 31st, the People moved to revoke probation based on the charged attempted robbery. (Pen. Code, §§ 1203.2, subd. (a), 1203.3.)

At the revocation hearing, held on October 14th, the court denied a motion by defendant to continue the hearing until after trial on the underlying offense, then set for 12 days hence. A second such motion made just prior to defendant taking the stand was also denied. At the conclusion of testimony that day, including testimony from defendant and an alibi witness, the court found by clear and convincing evidence that defendant had violated the terms of his probation. At that time, the court denied a third defense motion for continuance, and thereupon ordered probation revoked, sentencing defendant to an 18-month prison term less presentence custody and conduct credits.

A timely notice of appeal was filed on December 8, 1981.

In *People* v. *Jasper* (1983) 33 Cal.3d 931 [191 Cal.Rptr. 648, 663 P.2d 206], decided since the completion of briefing in this case, our Supreme Court addressed a contention nearly identical to that presented in this case. The defendant-probationer in *Jasper* complained that the denial of his motion to continue his probation revocation hearing until completion of trial on the underlying charge (burglary) improperly forced him to choose between, on the one hand, remaining silent at the hearing with the attendant risk of revocation and, on the other hand, presenting his defense and thereby disclosing his theory of defense in advance of trial on the underlying charge. (*Id.,* at p. 933.) The court reexamined its prior decision in *People* v. *Coleman* (1975) 13 Cal.3d 867 [120 Cal.Rptr. 384, 533 P.2d 1024], in which

the court had announced a limited exclusionary rule that allows a revocation hearing to be held before trial on the underlying offense but which precludes subsequent prosecutorial use of a probationer's testimony and its fruits, except for purposes of impeachment and rebuttal where it appears from clear inconsistencies in testimony that the defendant has perjured himself either in the trial or at the prior revocation hearing. (*Jasper*, at p. 933; *Coleman*, at p. 877.) Reaffirming its prior decision, the court in *Jasper* noted, "as *Coleman* makes clear, by reason of its limited exclusionary rule, a probationer's rights are not impaired by reason of the timing of his revocation hearing. [Citations.]" (33 Cal.3d at p. 935.)

In *Jasper*, as in the instant case, the defendant argued that recent state Supreme Court decisions in the area of prosecutorial discovery had eroded the underpinnings of *Coleman*. The court rejected that argument, reasoning: "These cases[1] impose substantial additional restrictions upon the People's use of pretrial discovery procedures to compel disclosure of incriminating evidence. Yet a probationer's *voluntary* testimony or defense presented at a probation revocation hearing cannot fairly be characterized as a 'compelled disclosure' within the scope of [those] cases." (*Jasper, supra,* 33 Cal.3d 931, 934.)

Finally, the court in *Jasper,* while approving the *Coleman* admonition that the most desirable method of handling revocation hearings may be to await trial of the criminal proceedings, reiterated the standard to be applied in ruling on a motion for continuance, stating, "Whether a revocation hearing should be held before trial rests in the reasonable discretion of the trial court." (*Jasper, supra,* 33 Cal.3d 931, 935; *Coleman, supra,* 13 Cal.3d 867, 897.)

■ Thus, defendant's claim of compelled self-incrimination must be rejected for, as was noted in *Coleman*, "Even if we assume, arguendo, that defendant's constitutional claim has merit, the exclusionary rule . . . gives probationers all the relief to which they are constitutionally entitled." (13 Cal.3d 867, 891-892.) Defendant's additional constitutional claims grounded on the right to present a defense, the right to due process of law and equal protection must also be rejected since they are premised on the same constitutional tensions and policies discussed at length in *Coleman*. (*Id.,* at pp. 873-878.) Moreover, those additional claims are spuriously thrown into defendant's argument without individual analysis.

---

[1]The court referred specifically to *People* v. *Collie* (1981) 30 Cal.3d 43 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776], *People* v. *Belton* (1979) 23 Cal.3d 516 [159 Cal.Rptr. 195, 591 P.2d 485] and *Allen* v. *Superior Court* (1976) 18 Cal.3d 520 [134 Cal.Rptr. 774, 557 P.2d 65]. (*Jasper, supra,* 33 Cal.3d 931, 934.)

The question of abuse of discretion remains. In addition to the claim of compelled disclosure discounted above, defendant urged in support of his motion for a continuance that the length of the continuance would be only 12 days (plus the length of the trial) and that he was unable to secure the attendance at the hearing of witnesses other than the one alibi witness. ■ Although the Supreme Court has so far declined to set out the criteria by which a trial court's discretion is to be exercised in deciding whether to hold a probation revocation hearing before or after trial (*Coleman, supra,* 13 Cal.3d 867, 897), in general, "[t]he question of whether a particular denial of a continuance is an abuse of discretion must necessarily turn on the circumstances of each case. [Citation.]" (*People* v. *Sandoval* (1977) 70 Cal.App.3d 73, 82 [138 Cal.Rptr. 609, 99 A.L.R.3d 765] [request for continuance of probation revocation hearing to secure absent witnesses].) ■ Turning to the circumstances here, the mere fact that trial on the underlying charge was set for a date 12 days off does not, in our opinion, of itself demonstrate a clear abuse of discretion. ■ As to the absent defense witnesses, defense counsel made absolutely no showing on any of the established prerequisite conditions for the granting of a continuance on such ground, i.e., (1) a particular obtainable witness, (2) materiality of the evidence, (3) the necessity of the witness's testimony and (4) diligence to obtain the witness's attendance. (*People* v. *Sandoval, supra,* at p. 82.) When asked to produce copies of subpoenas served on the absent witnesses, defense counsel responded, "If I were to show those served subpoenas to the District Attorney, whether or not that person testifies, she [Assistant District Attorney Wright] knows clearly then who our witnesses are at the underlying trial in this case."

■ Again, the answer to that concern is found in the limited exclusionary rule of *Coleman* and *Jasper*. While those cases specifically addressed the need to immunize voluntary *testimony* of defense witnesses produced at a revocation hearing, we believe that the policy and rationale behind those cases extends as well to immunize the *identities* of potential defense witnesses voluntarily disclosed in the course of a motion to continue such proceedings. "The exclusionary rule applies to the fruits of the probationer's prior revocation hearing in order to remove completely any illegitimate incentive to schedule revocation hearings in advance of trial. [Citation.]" (*Coleman, supra,* 13 Cal.3d 867, 891; *Jasper, supra,* 33 Cal.3d 931, 933.) In the spirit of that end, we think it logical and necessary that disclosures as to the identities and expected testimony of absent witnesses made in support of a motion to continue a revocation hearing be encompassed by the exclusionary rule. Otherwise, a revocation hearing could be scheduled immediately after the filing of charges on the underlying offense and possibly before the attendance of defense witnesses could be secured, thus putting a probationer-defendant to the hard choice of either disclosing infor-

mation potentially helpful to the prosecution or proceeding without needed witnesses.

The self-incriminating potential of such disclosures has been recognized by our Supreme Court in other contexts: " 'It requires no great effort or imagination to conceive of a variety of situations wherein the disclosure of the expected testimony of defense witnesses *or even their names and addresses,* could easily provide an essential link in a chain of evidence underlying the prosecutor's case in chief.' [Citation.]" (*Allen* v. *Superior Court* (1976) 18 Cal.3d 520, 526-527 [134 Cal.Rptr. 774, 557 P.2d 65], quoting from *Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320, 326 [85 Cal.Rptr. 129, 466 P.2d 673].)[2] In rejecting the constitutional adequacy of a protective order issued by the trial court in *Allen,* the Supreme Court elaborated on the possible prosecutorial benefit to be derived from mere names and addresses of potential defense witnesses: "For example, if the defense witnesses identified are friends or relatives of an accused, the prosecution can anticipate an alibi defense; if police officers the defense of entrapment can be projected. The trial judge's qualification of the instant order [enjoining the People from contacting any individual defense witnesses named in the order-compelled disclosure until such disclosure was made by the defense at trial] in no way prevents the People from investigating the background of the designated witnesses or questioning their friends or acquaintances. Such investigation may reveal the details of the alibi or other defenses, or may yield other evidence useful to the prosecution including impeachment witnesses, inconsistent statements, and admissible evidence of specific instances of misconduct by prospective witnesses." (18 Cal.3d at p. 526, fn. 4.)

▮▮ On the facts here presented, defense counsel's refusal to make disclosures in support of the continuance motion, while grounded on well-founded caution, gives defendant no cause to now challenge the probation revocation order. The record shows that when defense counsel objected to the disclosure his concern was not with prejudicing his client's rights in the revocation proceedings, but rather with prejudicing such rights at the subsequent trial. That being his concern, he should have disclosed the information in support of the motion and later put the People to their proof by objecting, either prior to or at trial, to prosecutorial use of any revocation hearing disclosures or their fruits; but no such objection was apparently

---

[2]By citing to the *Allen* case, *supra,* which dealt with the issue of prosecutorial discovery, we do not intend to equate disclosures of information made in support of a revocation hearing continuance with "compelled disclosure" in the sense of such cases. (Cf. *Jasper, supra,* 33 Cal.3d 931, 934.) Our intention, rather, is to emphasize the potential benefit to the prosecution of such disclosures and hence the concomitant "illegitimate incentive to schedule revocation hearings in advance of trial." (33 Cal.3d at p. 933.)

made. (See procedures set forth in *Coleman, supra,* 13 Cal.3d 867, 889-891.)[3]

■ As it is, defendant having made no showing in support of the need to continue the proceedings to obtain witnesses, we cannot say that the trial court abused its discretion in denying the motion. Similarly, in light of all circumstances before the court, there was no abuse of discretion in denying the motion to continue until after trial on the underlying offense.

■ At oral argument, appellate counsel for defendant urged us to take judicial notice of the records in *Jasper, supra,* and a case still pending before the Supreme Court, *In re Shaw* (Crim. 22365, hg. granted Nov. 27, 1981). Those records assertedly show a "routine practice" in San Francisco Superior Court of denying motions to continue revocation hearings until after trial. Ironically, the Supreme Court in *Jasper* reviewed the materials we are being asked to examine from that case and concluded, "The record does not reflect that this practice [scheduling all probation revocation hearings in advance of trial] exists . . . ." (33 Cal.3d at p. 935.) But more significantly, the court continued, *"In any event, we decline to reverse defendant's conviction solely on that basis,* for as *Coleman* makes clear, by reason of its limited exclusionary rule, a probationer's rights are not impaired by reason of the timing of his revocation hearing. (Accord *People* v. *Sharp* (1976) 58 Cal.App.3d 126, 130 . . . ; see also Pen. Code, § 1203.2, subd. (a), authorizing probation revocation 'at any time' and 'regardless whether [the defendant] has been prosecuted for such [new] offenses.')" (*Ibid.;* italics ours; bracketed material in original.) Although the *Jasper* court disapproved of the *Sharp* case, *supra,* to the extent that it sanctioned routine disregard of the *Coleman* admonition that " 'the most desirable method' of handling revocation hearings may be to await trial of criminal proceedings" (*Jasper,* at p. 935), the court, as indicated by its citation, evidently agreed with the following conclusion reached in *Sharp*: "[T]he message of *Coleman* is . . . that the state may continue to press for revocation of probation before trial. The trial court may, of course, exercise its discretion and postpone revocation proceedings until after trial. But it may also follow the procedure which apparently has been adopted in the San Francisco Superior Court, namely, to set virtually all revocation hearings prior to trial, without exercising discretion in each case." (*Sharp, supra,* 58 Cal.App.3d 126, at p. 130 [129 Cal.Rptr. 476]; fn. omitted.)

By declining to reverse the conviction in *Jasper* solely on the basis of any disapproved "routine practice" in San Francisco Superior Court, the Su-

---

[3]Instead, he moved prior to trial to dismiss the pending charges, on grounds that *Coleman* immunity was inadequate. Thus, it appears that defendant never even availed himself of the immunity to which he was entitled.

preme Court indicated that the rights of the defendant therein were adequately protected by the exclusionary rule. We see no significant difference between the situation in *Jasper* and that presented in this case, and defendant does not attempt to draw such a distinction. Thus, we are constrained by the holding in *Jasper* to conclude that defendant in this case, like the defendant in *Jasper*, suffered no demonstrated prejudice requiring reversal of the judgment, even if such a practice existed at the time of his motions.[4]

In affirming the judgment, we nevertheless wish to add our voices to the chorus of those who denounce the routine practice of holding probation revocation hearings in advance of trial. Such practice is in our view unjustified, oppressive and susceptible of calculated abuse. (See dis. opns. of Bird, C. J., and Broussard, J., (Reynoso, J., conc.) in *Jasper, supra,* 33 Cal.3d 931, 936-945.) It is regretfully apparent that the *Coleman* exclusionary rule is largely ineffectual in deterring such practice, especially as long as defendants, as in this case, decline to enforce by timely objection their immunity and thereby make such practice inconvenient for the prosecution.

The order revoking probation is affirmed.

Kline, P. J., and Rouse, J., concurred.

---

[4]Because the probation revocation hearing in this case preceded the passage of Proposition 8 in the June 1982 election, adding section 28, subdivision (d), to article I of the state Constitution, the issue of the *Coleman* limited exclusionary rule's continuing validity is not before us. (*Jasper, supra,* 33 Cal.3d 931, 935; see *People* v. *Smith* (1983) 34 Cal.3d 251 [193 Cal.Rptr. 692, 667 P.2d 149] [Prop. 8 applies only to crimes committed on or after its effective date].)