Filed 3/30/21  P. v. Johnson CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D077899 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. PLE63602) |
| KEVIN ANTOINE JOHNSON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Peter C. Deddeh, Judge.  Affirmed.

Heather L. Beugen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Kevin Antoine Johnson was charged in *People v. Johnson*, San Diego County Superior Court case No. SCD286261, with committing new criminal offenses while on parole.  After a contested parole hearing held

concurrently with a preliminary hearing in case No. SCD286261, the court on July 27, 2020, found defendant violated parole, revoked his parole, and remanded him to the custody of the sheriff pending the conclusion of case No. SCD286261.

Defendant contends that the court violated his right to due process of law by holding a single parole violation and revocation hearing; that he was prejudiced by the simultaneous proceeding because his counsel was unprepared for the parole revocation hearing; and that hearsay testimony, which was properly introduced at the preliminary hearing, was improperly presented for parole revocation. As we explain, we reject these contentions and affirm the order revoking defendant's parole.

## FACTUAL BACKGROUND

At about 9:00 p.m. on June 5, 2020, defendant went to his aunt's second floor apartment located in an apartment complex in San Diego. About 45 minutes later, San Diego Police Department officers responded to a report of a fire at the complex. On arrival, officers saw no fire, but activity in an alley behind the complex. Two other officers who had already arrived at the scene motioned the officers to a broken window of a second floor apartment. Directly below the window was a microwave oven resting on the roof of a parked car. The officers heard a woman screaming from what appeared to be the same second floor apartment. Officers then went to that apartment and, while in the doorway, saw an elderly woman sitting against the wall and a man later identified as defendant kneeling in the middle of the apartment with his hands up. He was screaming and appeared to be under the influence.

Defendant became violent when officers entered the apartment. One of the officers felt defendant attempting to tug at his duty belt where his gun

2

was holstered. After defendant was in custody, that officer felt pain in his mid and lower back. The officer went to urgent care that night, where he was diagnosed with a back strain and given medication. He was placed on light duty for four days and thereafter felt lingering back pain for approximately two weeks.

Once the scene was secured, officers observed a microwave oven on top of a 2000 Toyota parked below the apartment window. There was dirt and debris on the car and a dent on its hood. Its owner stated there had been no damage to the car when he parked it, and estimated the damage at $1,500. Officers also observed another parked car, a 2002 Saturn, that had a three-inch dent on the top of the hood and there was dirt and debris on that car as well. The Saturn owner also indicated there had been no damage when she parked it, and estimated repairs at approximately $500. A vacuum canister was found next to the cars.

## PROCEDURAL BACKGROUND

A felony complaint was filed in case No. SCD286261, charging defendant with assault on a police officer in violation of Penal Code[1] section 243, subdivision (b); being under the influence of a controlled substance in violation of Health and Safety Code section 11550, subdivision (a); and felony vandalism in violation of section 594, subdivision (b)(1).

As noted, defendant was on parole at the time of the June 5 apartment incident. One of defendant's parole conditions was to obey all state, federal, and municipal laws. Another parole condition prohibited him from being under the influence of a controlled substance. He was informed his parole

---

[1] Unless indicated otherwise, all additional statutory references are to the Penal Code.

could be violated without a criminal conviction. Defendant signed an acknowledgment of his parole conditions when he was released on February 15, 2018.

Based on the charges filed in case No. SCD286261, the following three parole violations were filed against defendant in case No. PLE63602: 1) assault on a police officer; 2) being under the influence; and 3) vandalism.

Discussions between counsel followed as to whether and when the parole revocation and preliminary hearing would be held. On July 27, the day of the hearing, defense counsel for the first time stated defendant objected to a concurrent hearing. The prosecution argued a single hearing was appropriate because some of the same witnesses would be testifying at the revocation and preliminary hearings, and because there were COVID restrictions that could be satisfied by holding the proceedings simultaneously. The court concluded a concurrent hearing was proper.

During the contested revocation hearing, the court in case No. PLE63602 found insufficient evidence that defendant was under the influence of a controlled substance. However, based on a preponderance of the evidence standard, it found defendant violated his parole by committing assault on a police officer and vandalism. The court revoked his parole. Based on the same evidence, the court concluded in case No. SCD286261 there was sufficient cause shown that defendant committed all three counts and held him to answer on the charges. The court remanded defendant to the custody of the sheriff pending the conclusion of case No. SCD286261.

Defendant filed a timely notice of appeal.

## DISCUSSION

### A. *Guiding Principles*

The due process rights of parole violators are set forth in *Morrissey v. Brewer* (1972) 408 U.S. 471 (*Morrissey*). In that case the court did not set a time limit when a parole violation hearing must be held, but rather stated it must be "as promptly as convenient after arrest while information is fresh and sources are available." (*Id*. at 485.) Our high court adopted the *Morrissey* standard in *People v. Coleman* (1975) 13 Cal.3d 867 (*Coleman*).

In *Coleman*, our high court reiterated that a probationer has a right to defend him or herself against a petition filed to revoke probation. This includes the right to speak on his or her own behalf, present mitigating factors, and argue that generally, the ends of justice do not warrant revocation. (*Coleman, supra*, 13 Cal.3d at p. 873.) A parolee has equivalent rights in terms of due process requirements. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 441.)

*Coleman* addresses the question of the timing of a revocation hearing vis-à-vis a preliminary hearing or trial on the charges for offenses that form the basis of the revocation. The court there stated, "the most desirable method of handling the problems of concurrent criminal and probation revocation proceedings may well be for revocation proceedings not even to be initiated until after disposition of the related criminal proceedings." (*Coleman, supra*, 13 Cal.3d at p. at 896.) However, as the People point out, *Coleman* did not bar probation revocation proceedings from being held in advance of trial. Rather, *Coleman* concluded that on a timely objection by the probationer, the probationer's testimony would be inadmissible at a subsequent criminal trial, except as impeachment or on rebuttal. (*Id.* at p. 889.)

5

This rule—the *Coleman* Rule—allows "the state to continue to press for revocation of probation either before or after a probationer's trial on related charges, but insures that this scheduling discretion will not be influenced by the illegitimate desire to gain an unfair advantage at trial" (*Coleman*, *supra*, 13 Cal.3d at p. 889); and allows the probationer to present a full defense at the revocation hearing without running the risk of prejudicing a defense at a subsequent trial. (*Id.* at pp. 893–894.) The *Coleman* Rule thus "affords ample protection to a probationer who is fearful that the People will make improper use of the evidence elicited at the revocation hearing." (*People v. Jasper* (1983) 33 Cal.3d 931, 934–935 (*Jasper*).)

As *Jasper* points out, the *Coleman* Rule makes clear that a probationer's rights are not impaired by the timing of a revocation hearing. (*Jasper*, *supra,* 33 Cal.3d at p. 935.) Although *Jasper* approved of *Coleman*'s observation that the most desirable procedure would be to wait until the criminal charges are completed, it noted "whether a revocation hearing should be held before trial rests in the reasonable discretion of the trial court." (*Ibid.*; *Coleman, supra*, 13 Cal.3d at p. 897.)

Moreover, section 1203.2, subdivision (a) authorizes parole revocation "at any time" and "regardless of whether the person has been prosecuted for [the new] offenses." As was stated in *People v. Weaver* (1985) 39 Cal.3d 654, 659, it therefore would be improper to adopt a supervisory rule mandating the staying of revocation hearings until after the pending criminal charges are completed. (See *People v. Preyer* (1985) 164 Cal.App.3d 568, 573 (*Preyer*) [noting "there may be different reasons to hold the probation revocation hearing before a related trial," such as when a court tries to "avoid unnecessary appearances of witnesses" or "avoid recycling a probation revocation in one court waiting for completion of matters not even filed yet in

6

another court"; and further noting such "matters [are] appropriately left to the discretion of the trial court," as section 1203.2 "does not prohibit hearing probation revocation matters before disposition of a related criminal case"].)

B. *Analysis*

In light of section 1203.2 and *Coleman* and its progeny, we reject defendant's due process of law challenge in this case. The question here is whether the trial court abused its discretion in holding the parole revocation hearing simultaneously with the preliminary hearing. Defendant's argument rests on the assertion his counsel allegedly did not have sufficient time to prepare for the revocation hearing and he was prejudiced because the two proceedings employ different evidentiary standards and rules. We conclude there was no abuse of discretion.

As to the preparation time, we note defense counsel at the July 27, 2020, concurrent hearing did not object to the revocation hearing on the ground of lack of preparedness. Instead, defense counsel merely noted defendant's "*preference*" was "to have the two hearings separate." (Italics added.) Nor did defense counsel at that time request a continuance of the revocation hearing.

In addition, the record shows the parties had been negotiating between themselves and with the court as to when the two hearings would be held. The prosecution notified the defendant about a month before, and again about two weeks before, the July 27 hearing of its intent to have the preliminary hearing and parole revocation heard in a single proceeding because of overlapping witnesses and COVID restrictions. We thus conclude there was no undue surprise that the hearings would be held on the day scheduled, or that they would be held together.

We conclude the court's decision to proceed with a single hearing based on considerations of judicial economy and COVID restrictions was a proper exercise of its discretion. (*People v. Arreola* (1994) 7 Cal.4th 1144, 1159 [recognizing that as a "means of avoiding needless duplication and promoting judicial economy, in some instances the preliminary hearing on the charges that give rise to the probation revocation proceeding may be coordinated with the final revocation hearing, in a single proceeding"].) Here, the court avoided duplication of witnesses and unnecessary multiple appearances by witnesses in what was an otherwise straightforward proceeding. Case law has consistently held such considerations are appropriate in determining whether substantial justice will be gained or defeated. (See *ibid.*; *Preyer, supra,* 164 Cal.App.3d at p. 573; *People v. Samuels* (1983) 147 Cal.App.3d 1108, 1113.)

As to the difference in evidentiary standards between the two proceedings, that difference was clearly known by the court. Indeed, for purposes of revocation the court concluded the preponderance of the evidence standard had *not* been met that defendant was under the influence of a controlled substance during the June 5 incident; but was met for purposes of the good cause standard for the preliminary hearing on that charge and others. We thus reject defendant's claim he was prejudiced by the court's decision to conduct the preliminary hearing and revocation in a single hearing.

Finally, defendant contends the court improperly considered hearsay for purposes of the revocation hearing. The People point out that there is no evidence the court considered hearsay under Proposition 115 for any purpose except at the preliminary hearing. The record shows the trial court in any event had sufficient evidence without the alleged hearsay statements to find

a violation of parole.  Because defendant fails to demonstrate it was reasonably probable that he would have received a more favorable result if the hearings were separately held, we conclude there was no prejudice even if the court erred in admitting hearsay at the single hearing.  (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

## DISPOSITION

The order revoking defendant's parole is affirmed.


BENKE, Acting P. J.

WE CONCUR:


O'ROURKE, J.


DO, J.

9